IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAF-T-GARD INTERNATIONAL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SEIKO CORPORATION OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> 09 C 776 <br><br> District Judge Elaine E. Bucklo <br> Magistrate Judge Gilbert |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, Saf-T-Gard International, individually and as representative of a Class of similarly situated persons, by Class counsel, Keith J. Keogh, respectfully submits the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement ("Agreement") which this Court preliminarily approved on September 21, 2010.

The Court is advised that subsequent to the entry of the preliminary approval order, notice of the settlement of this action was mailed by the class administrator to 26,005 individuals.[1] Following the mailing, 4,158 notices were returned as undeliverable. The affidavit of the claims administrator is attached hereto as *Appendix 1*. In addition, the Claims Administrator caused the Published Notice to be published twice in USA Today, once in the Wall Street Journal and posted the Class Notice and the Claim Form on a website dedicated to the settlement. *Appendix 1*. There

---

[1] Discovery has verified that each Seiko store that sent facsimiles primarily used its local chamber of commerce directory to send facsimiles promoting its sales. The amount of faxing varied from store to store with some stores sending to the entire directory while others stores sent faxes to a handful of listings in the chamber directories. The parties agreed upon inclusive notice and included all businesses listed in the chamber of commerce directories

were five requests for exclusion and no objections submitted by Class members. *Id*. There were 1,832 claim forms filed. *Id*.

I. **OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT**

On February 6, 2009, Seiko removed plaintiff's state complaint filed on December 18, 2008, seeking redress for the alleged actions of Seiko for sending out unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") and Conversion.

The TCPA and implementing Federal Communications Commission regulations (Count I) make it illegal to fax unsolicited advertisements without the recipient's "express invitation or permission" or an "established business relationship." 47 U.S.C. §227.

After completing a substantial amount of discovery, which involved several motions to compel, five sets of written discovery requests to Seiko, review of computer hard drives, fifteen depositions of current and former employees of Seiko and eighteen subpoenas to third parties, plaintiff filed its revised[2] motion for class certification on February 22, 2010. *See* Doc. 49.

Seiko has denied and continues to deny each and all of the claims and contentions alleged in the action. Seiko also has asserted many defenses thereto, but in order to avoid the burden and expense of continued litigation, Seiko considers it desirable that this action be settled.

**MEDIATION**

On April 22, 2010, the parties had a settlement conference before Judge Mason, which was attended by the president of Saf-T-Gard and several corporate representatives from Seiko.

---

[2] Plaintiff filed a motion for class certification in the Circuit Court of Cook County prior to this matter being removed by defendant.

Because the parties were making progress and expressed a willingness to continue settlement discussions, Judge Mason continued the conference to May 11, 2010. Shortly before May 11, 2010, the parties were notified that the magistrate judge on this case would be reassigned to Judge Gilbert. Plaintiff's counsel contacted Judge Gilbert's chambers for available dates to hold a settlement conference, but the available dates did not fit the parties' schedule, which was complicated by the fact that Seiko and its California attorney had to fly in for the conference.

In order to build on the momentum of the April 22, 2010 conference, the parties had an all day settlement conference before Retired Judge James E. Sullivan of JAMS on July 8, 2010. As a result of the second settlement conference, the parties reached the settlement that is reflected in the Settlement Agreement executed by the parties, attached hereto as *Appendix 2*.

Counsel for plaintiff has reviewed and analyzed the legal and factual issues presented in this action, the information provided by defendants and third parties in discovery, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcome of one or more procedural and substantive appeals. Based on the review and analysis, and after arms-length negotiations with counsel for defendant, plaintiff entered into the Settlement Agreement.

As demonstrated below, the Agreement is ripe for consideration and final approval.

## II. THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT

### A. The Preliminary Approval Order.

On September 21, 2010, this Court entered an amended order granting preliminary approval of the Agreement reached between the parties. In the Preliminary Approval Order ("Order"), the

Court specifically found that the proposed terms of the settlement satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). The Order further established a procedural framework for the final approval of the settlement. The Order required the parties to cause notice certified by the Court to be mailed to the members of the Class, set deadlines and procedures for submission of claims, requests for exclusion, and objections to the settlement, and set January 14, 2010 for the final approval hearing.

### B. The Sending of Class Notice.

Subsequent to the entry of the preliminary approval order, notice of the settlement of this action was mailed by the class administrator to 26,005 individuals identified as potential[3] Class members. Following the mailing, 3,923 notices were returned as undeliverable. *Appendix 1*. In addition, the Claims Administrator caused the Published Notice to be published twice in USA Today, once in the Wall Street Journal and posted the Class Notice and the Claim Form on a website dedicated to the settlement. *Appendix 1*.

There were three requests for exclusion and no objections submitted by Class members. *Id*. There were 1,656 claim forms submitted. *Id*.

### C. The Value of the Settlement.

This Court has previously considered the terms of the settlement in granting preliminary approval of the Agreement. Pursuant to the Settlement Agreement, and subject to court approval, defendant has agreed to pay each class member who submits a valid and timely claim form a check in the amount of $375.00. In connection with the settlement, Seiko will make available an amount up to $3,500,000.00 against which to make payments as follows: (1) to class members making

---

[3] As noted above, the parties agreed upon inclusive notice and included all businesses listed in the chamber of commerce directories of each store branch.

claims; (2) for third-party settlement administration; (3)for an incentive award to Plaintiff in an amount to be determined by the Court, but not to exceed $12,000; and (4) to pay an award of attorneys' fees and costs to Class Counsel in an amount to be determined by the Court, but not to exceed $1,155,000.00. *Appendix 2* at  In addition to the monetary relief, Seiko has represented that it has implemented personnel training regarding TCPA issues. It has also removed all fax machines from its company stores. *Id*. at p.7 ¶2.

In summary, each class members who submitted a valid claim form will receive $375.00. Presently, the class administrator is reviewing the claim forms to insure that they are valid.

### D. No Objections Were Received.

Only three class members have elected to be excluded from the Class, and no Class member has objected to the settlement. This should be viewed as an endorsement of the settlement by the Class.

### III. THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.

The settlement satisfies all the requirements of Rule 23.

### A. Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.

The Settlement Class numbers in the thousands. When the action was commenced, Seiko had 18 store locations. Plaintiff believes that the majority of the stores sent promotional flyers via facsimile. The Wisconsin store alone used its Internet list of 4,265 businesses to send facsimiles promoting its national sales. Additionally discovery has verified that each Seiko store that sent facsimiles[4] primarily used its local chamber of commerce directory to send facsimiles promoting sales. The amount of faxing varied from store to store with some stores sending to the entire

---

[4] Not all of the stores sent advertisements via facsimile.

directory while others stores sent faxes to a handful of listings in the chamber directories[5]. The United States Court of Appeals for the Seventh Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Swanson v. American Consumer Industries, Inc.*, 415 F. 2d 1326, 1333 (7th Cir. 1969); *see also, Newberg on Class Actions*, 3rd Ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). The number of Class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

    **B.    Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact.**

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F. 2d 1013 (7th Cir. 1992). "Absolute commonality" is not required; commonality is satisfied if plaintiffs can demonstrate that a "common nucleus of operative fact" exists among the proposed class members. *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002). The commonality standard is "quite low." *Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 411 (N.D. Ill. 2006). Plaintiff may ordinarily satisfy the commonality requirement by showing that there is "at least one question of law or fact common to the class." *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). Class certification will not be defeated solely because there are some factual variations among the grievances of the class members. *Keele v. Wexler*, 149 F. 3d 589, 594 (7th Cir.1998).

    There are questions of law and fact common to the class that predominate over any questions

---

[5] The notice was sent to all listings in the chamber directories.

affecting only individual class members. The predominant common question of law is whether defendant engaged in a pattern of sending unsolicited fax advertisements when the form of the flyer that was faxed by each store that sent facsimiles was provided by Seiko's corporate headquarters. Plaintiff avers that all of the faxes in question were sent for the same national sales and within the same time frame.

Numerous courts have certified class actions under the TCPA. *Hinman v. M and M Rental Center* Inc., 545 F. Supp. 2d 802 (N.D. Ill. 2008); *Brill v. Countrywide Home Loans, Inc.,* 05 C 2713 (N.D. Ill. June 28, 2006); *Lampkin v. GGH, Inc.*, 146 P. 3d 847 (Okla. Ct. App. Oct. 31, 2006); *Transportation Institute v. Promo Dart, Inc.*, No. 06-2-03460-1 (King Co. Sup. Ct. Wash., Nov. 14, 2006); *Kavu, Inc. v. Omnipak Corporation*, 2007 U.S. Dist. LEXIS 5207, at *22-23 (W.D. Wash. Jan. 23, 2007); *Gene & Gene, LLC v. Biopay, LLC*, 2006 U.S. Dist. LEXIS 95082 (M.D. La. Dec. 20, 2006).

  **C.** **Rule 23(a)(3) - Named Plaintiff's Claims are Typical Of the Claims Of The Settlement Class.**

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F. 2d 225, 232 (7th Cir. 1993)("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *Parker v. Risk Management Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002); *see also*, Fed.R.Civ.P. 23(a)(3).

Commonality and typicality are often treated together because the analyses of each are often interrelated. *See, e.g., Parker*, 206 F.R.D. at 213; *see also*, *Kremnitzer v. Cabrera & Rephen, P.C.*,

202 F.R.D. 239, 241 (N.D. Il. 2001) ("Typicality, the third requirement, is closely related to the question of commonality."). "Typicality is established when there is a 'sufficient relationship . . . between the injury to the named plaintiff and the conduct affecting the class,' and the claims of the named plaintiff and those of the class 'are based on the same legal theory.'" Newberg, §3.13.

For virtually the same reasons discussed above, this element is also met. In this case, plaintiff was sent via facsimile a form flyer promoting a national sale, like the other Class Members. Its claims arose from the same question of law as those of the Class Members: Whether the facsimile it received is permissible under the TCPA. Rule 23(a)(3) is plainly satisfied in this case.

### D. Rule 23(a)(4) - Plaintiff and Class Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class.

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations: (1) whether the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the Plaintiff has any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

As set forth in the Declaration of Keith J. Keogh (*Appendix 3*), Plaintiff's counsels are experienced in TCPA class action litigation. In addition, Plaintiff has no interests in conflict with the Class. Therefore, Plaintiff and its counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

### E. The Settlement Class is Appropriate Pursuant to Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions and where (2) a class action represents a superior

method for the fair and efficient adjudication of the controversy. Because the claims arise from a standard practice, common questions predominate.

### F. The Standard For Granting Final Approval To The Class Action Settlement.

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591 (1997), the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *General Electric Capital Corporation v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997).

There is usually an initial presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions §11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *3 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

As the Seventh Circuit recognizes, courts generally favor settlements of class actions:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, "'there is an overriding public interest in favor of settlement.'" Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of School Directors of the City of Milwaukee*, 616 F. 2d 305, 312-13 (7th

Cir.1980)(citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

The Court considers the following six factors in making this determination:

1. The strength of the plaintiff's case on the merits measured against the terms of the settlement;

2. The complexity, length, and expense of continued litigation;

3. The amount of opposition to the settlement among class members;

4. The presence of collusion in gaining a settlement;

5. The stage of the proceedings; and

6. The amount of discovery completed.

*GE Capital* at 1082. (citing *Donovan v. Estate of Fitzsimmons*, 778 F. 2d 298, 308 (7th Cir. 1985)); *Synfuel Techs., Inc.,* 463 F. 3d at 653; *In re General Motors Corp. Engine Interchange Litig.,* 594 F. 2d 1106, 1132 (7th Cir.1979) (citations omitted); *Isby v. Bayh,* 75 F. 3d 1191, 1199 (7th Cir.1996). Of these considerations, the first is most important. *Synfuel Techs., Inc.,* 463 F. 3d at 653. The class action settlement in the present case satisfies each of the factors outlined in *GE Capital*.

**All Of The Factors Weigh In Favor Of Final Approval**

    **a. The $375 Per Claim Form, Removal of the Fax Machines and Personnel Training Provide Significant Benefits To The Settlement Class.**

In a TCPA case, each class member would be entitled to $500 per facsimile and up to $1,500 if they can prove a willful violation of the Act. While plaintiff submits that it has a strong claim, plaintiff recognizes that Seiko has defenses to the claims including the issue of the amount of faxing and the records needed to support such. Thus, each claimant in this settlement would receive $375.00. *Goldsmith,* at *5 (approving settlement with a monetary fund representing a portion of the

damages that could reasonably have been proven for the class). In addition to this monetary consideration, Seiko has removed the fax machines from its stores and has and will continue to engage in personnel training relating to the TCPA.

Seiko had 18 stores when this action was filed and 14 were open at the time of settlement. Like many retailers, it has been forced to weather a tough economic environment. These conditions impacted the amount available for settlement.

In addition, the settlement is warranted by the complexity, length and expense of continued litigation, satisfying the second *GE Capital* factor.

The settlement satisfies the third *GE Capital* factor because only three Class members have excluded themselves from the settlement and no Class member has objected to the settlement.

        b.     **The Settlement Resulted From Extensive Arms-Length Negotiations**

As a leading treatise on class action jurisprudence explains, "…decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg, §11.51. *See also*, Section IV(1)(A), *supra* (there is an initial presumption of fairness when a settlement has been negotiated at arms-length by experienced counsel). The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approved settlement upon finding of no "hanky-panky" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. Newberg, §11.42.

Settlement was reached after the close of discovery, which consisted of hotly contested motions to compel, and through an in-person settlement conference conducted by the Honorable

Michael T. Mason, Magistrate Judge of the United States District Court for the Northern District of Illinois, and an additional all day in-person mediation session conducted by the Honorable James E. Sullivan (Ret.) of JAMS.

The significant economic benefit to the Settlement Class, coupled with the removal of the fax machines and personnel training, demonstrate that the settlement is more than fair, reasonable and adequate.

Finally, the fifth and sixth *GE Capital* factors also support the final approval of this settlement in light of the stage of pre-trial proceedings and the discovery completed to date. The parties engaged in substantial amounts of discovery, which involved several motions to compel, five sets of written discovery requests to Seiko, review of computer hard drives, fifteen depositions of current and former employees of Seiko and eighteen subpoenas to third parties. It was not until after the close of discovery and after plaintiff filed its revised motion for class certification on February 22, 2010 that the parties engaged in substantive settlement discussions.

Given the stage of proceedings, the investigation and discovery completed, the proposed settlement satisfies the fifth and sixth *GE Capital* factors.

**The Notice To Class Members Is Adequate**

Under Federal Rule of Civil Procedure 23(c)(2), class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. Manual for Complex Litig. (Fourth) § 21.31 (2004). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), *quoting, Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950).

The Notice sent to class members was clear and straightforward, providing putative class members with enough information to evaluate whether to participate in the Settlement, as well as directions on how to seek further information. *Appendix 2* at *Exhibit B*. The Notice contained all of the information required by Rule 23, such as the nature of the action; the class definition; summary of the class claims and defenses; the amount paid for a claim; the potential class representative fee and attorneys' fees and costs; ability to enter an appearance; exclusion rights; objection rights and binding effect of a class judgment on members under Rule 23.

Notice was provided by both mail and publication. The Claims Administrator mailed, by first class mail, the Class Notice to persons in the Settlement Class for whom potential mailing addresses were located through the exercise of reasonable diligence by Plaintiff and Seiko, including mailing the Class Notice to the entities in the internet directory used by the Kenosha, WI store and to the members of the Chambers of Commerce closest to each of Seiko's stores for which a Chamber directory from 2007, 2008, 2009 and 2010 was available (in that order of priority).

In addition, the Claims Administrator caused the Published Notice to be published twice in USA Today, once in the Wall Street Journal and posted the Class Notice and the Claim Form on a website dedicated to the settlement. *Appendix 1*.

The notice scheme is consistent with the due process requirements incorporated in Rule 23(c)(2)(B). Rule 23's advisory committee note states that the "mandatory notice pursuant to subdivision (c)(2) . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject." Fed. R. Civ. P. 23(d)(2) advisory committee's note. (*citing*, *Mullane*, 339 U.S. 306 (additional citations omitted).

**IV. <u>FINAL APPROVAL ORDER</u>**

The parties have agreed to the Final Approval Order attached as *Exhibit B* to the Settlement Agreement that is attached as *Appendix 2*. A copy of the proposed final approval order is also attached hereto as *Appendix 4* for the convenience of the Court. The release that is incorporated into the Final Approval Order is narrowly tailored to claims that "relate to Facsimile Transmissions." *Appendix 1* p.9. Further, claims or transactions arising out of the actual purchase or lease of goods or claims for personal injury are specifically excluded from the release. *Id*.

## V. THE ATTORNEY'S FEES AND COSTS ARE REASONABLE.

Pursuant to the Agreement, Class Counsel requests approval of payment of attorney's fees and costs in the amount of 33% of the cash[6] value of the settlement, which equals $1,155,000.00.

Plaintiff's counsel includes experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter. The Seventh Circuit has specifically authorized the district courts to award attorney's fees using the percentage of fund method. *In re Synthroid Mktg. Litig.*, 264 F. 3d 712 (7th Cir. 2001).

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Gaskill v. Gordon,* 160 F. 3d 361, 362 (7th Cir. 1998); *Florin v. Nationsbank, N.A.,* 34 F. 3d 560, 566 (7th Cir. 1994); *In re Cont'l Ill. Sec. Litig.,* 962 F. 2d 566, 572 (7th Cir. 1992) *("Cont'l I"); In re Cont'l Ill. Sec. Litig.,* 985 F. 2d 867, 868 (7th Cir. 1993) *("Cont'l*

---

[6] Non-monetary benefits such as the agreement to stop faxing, the removal of the fax machines and training on the TCPA are relevant to determine value to the class. *Vizcailov v Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002).

*II")*; *Kendrick v. Atcor, Inc.,* 1988 U.S. Dist. LEXIS 8389 (N.D. Ill. 1988).

In *Taubenfeld v. Aon Corp.,* 415 F. 3d 597 (7th Cir. 2005), the Seventh Circuit provided guidance for the award of attorneys' fees in a securities class action:

> [W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." Although it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante,* courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions. *Id.* at 599 (citation omitted). In affirming an award of fees equaling 30% of the $7.25 million settlement fund plus expenses, the *Aon* court considered, among other things, the following factors: (1) "awards made by courts in other class actions" which "amount[ed] to 30-39% of the settlement fund"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case.

*Id.* at 600. In considering a fee request, the court must do its "best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.,* 264 F.3d at 718. As discussed below, 33% of the Cash Settlement Fund, which includes expenses in this case and excludes the value of the non monetary benefits of the settlement, is the most appropriate method to "recreate the market" given the nature and scope of the Litigation, the time spent and expenses incurred in its prosecution and the substantial result achieved for the Class.

"'[T]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class,' particularly where that percentage of the benefit approach replicates the market." *Cooper v. IBM Pers. Pension Plan,* No. 99-829, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005). The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *See Kirchoff v. Flynn,* 786 F. 2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar

15

services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original).

In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F. 2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F. 3d 283, 333 (3d Cir. 1998). If this case were an individual case, the customary fee arrangement would be contingent, on the percentage basis, and in the range of 33 1/3% to 40% of the recovery. *See Kirchoff* at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Limited Partnership v. Price Waterhouse, LLP,* 2001 WL 1568856 at *4 (N.D. Ill 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding class counsel the requested one-third of the common fund); *Phemister v. Harcourt Brace Jovanovich, Inc.,* No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at *40–41 (N.D. Ill. Sept. 14, 1984) ("Contingent fee arrangements in non-class action damage lawsuits use the simple method of paying the attorney a percentage of what is recovered for the client. The more the recovery, the more the fee. The percentages agreed upon vary, with one-third being particularly common.").

This District has noted that "the Seventh Circuit strongly endorsed the percentage method of computing appropriate fee awards in class action common fund cases." *See Goldsmith v. Tech. Solutions Co.,* 1995 U.S. Dist. LEXIS 15093, *24 (N.D. Ill. 1995) (other citations omitted) (approving 33.33% fee award), *citing Cont'l Ill. II,* 985 F. 2d 867. This District has also recognized that a fee award of "33 1/3% is in fact in line with that which has, in previous cases, been approved," and "[t]hirty three percent appears to be in line with what attorneys are able to command on the open market in arm's length negotiations with their clients." *Id.* at 26–27. Notably, the Northern District

has recognized the appropriateness of a fee of nearly 1/3 of the common fund in complex litigation and the historic approval of such fees in the Seventh Circuit. See *also Family L.P. v. Price Waterhouse LLP*, 2001 WL 1568856 (N.D. Ill. 2001) (33 1/3 % awarded); *In re Lithotripsy Antitrust Litig.,* 2000 U.S.Dist. LEXIS 8143, **6-7 (N.D. Ill. June 12, 2000) ("33.3% of the fund plus expenses is well within the generally accepted range of the attorneys' fee awards in class-action anti-trust lawsuits."); *In re Spyglass, Inc. Sec. Litig.,* No. 99-c-5 12 (N.D. Ill. March 24, 2000) and *In re Spyglass, Inc. Sec. Litig.,* No. 99-cv-0512 (N.D. Ill. May 31, 2000) (33% fee award approved); *Rehm v. Eagel Fin. Corp.,* 1998 U.S. Dist. LEXIS 20015 (N.D. Ill. Dec. 8, 1998) (approving 33.3% fee request), *aff'd Rehm v. EagelFin. Corp.,* No. 96-2455 (N.D. Ill. Dec. 8, 1998) ("the 7thCircuit Court of Appeals, as well as the majority of other circuit courts have approved the use of the percentage of the fund method to award attorneys' fees in class action/common fund cases"); *Taubenfeld*, 415 F.3d at 598 (7th Cir. 2005) (affirming fee award of 33.3%). *Gaskill*, 942 F. Supp. 382, *aff'd* 160 F. 3d 361 (7th Cir. 1998) (38% awarded); *In Re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, Case No. 05 CV 07097 (N.D. Ill. 2010) ( Awarded $7.33 million for attorney fees, which is 33% of the common fund); *See also Appendix 5*, Chart of Securities Class Actions awarding fees of 33.3% of the Settlement Fund.

The requested one-third fee award here also comports with similar fees awarded by district courts in TCPA class actions. *Hinman v. M and M Rental Center* Inc., 06-cv-01156, Doc. 225(N.D. Ill. 2008) (Awarded 33% of the common fund plus costs); *CE Design, Ltd. v. Cy's Crabhouse,* 07 C 5456 (N.D. Ill.) (Kennelly, J.) (N.D. Ill. Sept. 22, 2010) (Awarded 33% of the common fund plus costs. Doc. 373); *Holtzman v. CCH*, 07 C 7033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Awarded 33% of the common fund plus costs. Doc. 33);*CE Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66

(N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Awarded 33% of the common fund plus costs. Doc. 32-2); *Locklear Electric, Inc. v. Norma L. Lay*, 09 C 0531 (S.D. Ill.) (Reagan, J.) (Awarded 33% of the common fund plus costs. Doc. 67) *Accounting Outsourcing, LLC. v Verizon Wireless,* 2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) (Awarded $2,314, 328, which is in excess of 35% of the common fund, plus costs); *Nicholson v Hooters of Augusta, Inc.*, 95-RCCV-616 (Richmond County, Ga. April 25, 2001) (Awarded $3,931,035.62, which was 33% of the common fund plus costs).

**No Class Member Objected to the Attorneys' Fees and Expenses Requested**

As noted above, out of over 26,005 potential Class Members[7], no objections to counsel fees and costs were filed. *See Appendix 1*. Based on the foregoing, the Court should grant Class Plaintiff's request for attorneys' fees (inclusive of expenses) in the amount $1.155 million or 33.3 % of the Settlement Fund.

**THE COURT SHOULD ALSO APPROVE THE REQUESTED SERVICE AWARD**

Class Counsel requests that the Court approve service awards in the amount of $12,000 for plaintiff. The Notice informed the Class of this request and no objections to proposed service awards were received. Courts have approved service awards on the basis that Named Plaintiffs in class actions take risks and perform services for the benefit of the Class. *See* Albert Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.). Indeed, "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses." *In re Cont'l I*, 962 F. 2d 571. Since *In re Cont'l I*, service awards for named

---

[7] In addition, any reduction in fees will not benefit the class as the money set aside for fees would be returned to Seiko and does not impact the $375 each class member who submitted a claim form will receive.

plaintiffs in class actions have been regularly granted and upheld in this Circuit. *See Cook,* 142 F. 3d 1016 (7th Cir. 1998); *In Re Ameriquest Mortgage Co.* at ¶12. (Awarded service payments of $7,500 to each of the 87 named plaintiffs.); *Gibson & Company Insurance Brokers, Inc. v. QFA Royalties LLC.*, 06-cv-05849-PSG-PLA Document 212 (C.D. Ca. 2009) ($15,000 to the named plaintiff for service payment in TCPA class settlement)*; Nicholson v Hooters of Augusta, Inc.*, 95-RCCV-616 (Richmond County, Ga. April 25, 2001) ($15,000 to the named plaintiff in a TCPA class action for service payment).

Plaintiff invested time and energy working with counsel, responded to substantial discovery, was deposed, attended two settlement conferences and carried to its potential detriment and the benefit of the Class the substantial risk of nonrecovery. For its willingness to continue to represent the Class in such circumstances and for its ultimately fruitful efforts on behalf of the Class, plaintiff has earned the requested service award.

### VII. CONCLUSION

For all the reasons set forth above, Plaintiff individually, and as representative of the Class, by Class Counsel, request that this Honorable Court grant final approval of the Agreement and enter the proposed final approval order attached hereto as *Appendix 4*.

Respectfully submitted,

/s/ Keith J. Keogh

Keith J. Keogh
Ainat Margalit
KEOGH LAW, LTD.
101 N. Wacker Dr., Suite 605
Chicago, IL 60606
(312) 726-1092
(312) 726-1093 (fax)

19

## CERTIFICATE OF SERVICE

       I, Keith J. Keogh, hereby certify that on January 7, 2011, I filed the foregoing documents with the Clerk of the Court using the CM/ECF System, which sent notification of such filing to the following parties via electronic mail to all parties of record.

                                                  /s/ Keith J. Keogh